**AFFIRMED and Opinion Filed May 19, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00109-CV

## IN THE INTEREST OF S.S., A MINOR CHILD

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-03102**

## MEMORANDUM OPINION
Before Justices Partida-Kipness, Reichek, and Goldstein
Opinion by Justice Reichek

This is an appeal from an order in a suit to modify the parent–child relationship. In a single issue, Father contends the trial court erred in finding a material and substantial change in circumstances had occurred and in modifying the parent-child relationship to allow Mother to take their daughter, S.S., out of the country. We affirm the trial court's order.

### Background

Father and Mother are the parents of S.S., a child born in 2016. The parties divorced in 2017 and were named as joint managing conservators of S.S., with Mother having primary custody. In 2018, Mother filed a petition to modify the parent-child relationship requesting, among other things, that she be allowed to

obtain a United States passport for S.S. and take S.S. with her to The Gambia to see her maternal grandfather, whose health was declining. Father opposed Mother being able to take S.S. out of the country and the trial court denied Mother's request.

In July 2019, Mother travelled to see her parents in The Gambia. Mother testified she notified Father of her intent to travel, but he did not respond to her messages. Because of this, Mother took S.S. to stay with an aunt in Chicago while she was away.

In August 2019, Father filed this suit to modify the parent-child relationship asking the court to reduce his child support obligation. Mother filed a counter-petition seeking to increase the amount of support.

Beginning in October 2019, Father ceased his visitation with S.S. Father said it was because he was told the custody schedule was not enforceable and he was waiting for a new court order to be put in place. Father did not see S.S. from October 5, 2019 until August 8, 2020. During that period, Mother sent Father numerous messages asking that he take S.S. for his scheduled periods of possession. Mother stated she eventually stopped sending messages because Father told her he was "not going to show up for [S.S]."

In September 2020, Mother amended her counter-petition to request again that she be allowed to obtain a passport for S.S. and travel with her internationally. Father subsequently amended his petition to request the court "continue to

permanently deny [Mother's] request for international travel and to obtain and/or have possession of the child's passport."

A hearing was conducted on the cross-petitions on November 5, 2020. With respect to the international travel issue, Father testified he opposed Mother's request because Mother had threatened to remove S.S. from the country and never bring her back. Father further testified that Mother did not tell him where S.S. was while she was in The Gambia and that she "hid" S.S. from him. As for Father's refusal to keep S.S. while Mother travelled, Father stated, "It is not my responsibility whenever [Mother] have to go on a vacation for me to hold the child. There's nowhere in the Texas Family Code where it states that if mother is going on vacation the father have to hold the child."

Mother denied threatening to abscond with S.S. to another country. She stated she is a United States citizen with a career as a registered nurse. She testified she had no intention of returning to The Gambia permanently where she would earn less than $200 per month. Although Mother wanted S.S. to be able to meet her grandparents, she was willing to accept restrictions on her ability to travel with S.S. to only countries that participate in the Hague Convention. Mother stated her brother lives in London and she had other family members in Sweden, France, and Germany. According to Mother, Father told her he would never agree to let S.S. get a passport because Mother was making him pay child support.

Mother also denied she hid S.S. from Father while she was visiting her parents. Mother stated she told Father she was travelling and, when Father eventually called and asked where S.S. was, she told him S.S. was in Chicago. Mother stated that, during the ten-month period in which Father did not see S.S., she frequently had to find babysitters or miss work.

After hearing the evidence, the trial court stated,

> It's tough to hear about a child being left behind in the care of somebody else because the child cannot travel with the mother and [] the father would not take the child so the child had to be left with another relative. I just - - I just - - that is something that happened since the last order. I don't think it's fair to the child. I don't think it's in the child's best interest. So the Court is going to authorize international travel; however, it's only to Hague Convention participating countries. So Gambia is prohibited until they are a signatory to the Hague Convention. The Court does not find a risk of international abduction. So the Court is going to order both parents to cooperate with the application of a passport.

The trial court signed its final order on January 22, 2021.

Father timely filed a request for findings of fact and conclusions of law. He did not, however, file a notice of past due findings of fact and conclusions of law as required by rule 297 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 297. No findings and conclusions were made. Father then brought this appeal.

**Analysis**

In a single issue, Father contends the trial court abused its discretion in ordering a modification of the international travel restrictions for S.S. because Mother failed to prove a material and substantial change in circumstances had

–4–

occurred. In determining whether the trial court abused its discretion, we engage in a two part inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) if so, whether the trial court erred in its exercise of that discretion. *In re J.P.M.*, No. 05-18-00548-CV, 2019 WL 6768763, at *1 (Tex. App.—Dallas Dec. 12, 2019, no pet.) (mem. op.). We recognize the trial court is in the best position to observe and assess the witnesses' demeanor and credibility and to sense the "forces, powers, and influences" that may not be apparent from merely reading the record on appeal. *In re C.M.C.*, No. 05-15-01359-CV, 2016 WL 7166415, at *4 (Tex. App.—Dallas Nov. 9, 2016, no pet.) (mem. op.). Accordingly, we defer to the trial court's resolution of underlying facts and its credibility determinations that may have affected its decision. *Id*. We do not substitute our judgment on those matters for that of the trial court. *Id*. If some evidence of a substantial and probative character supports the trial court's decision, there is no abuse of discretion. *In re K.M.B.*, 606 S.W.3d 889, 894 (Tex. App.—Dallas 2020, no pet.).

The trial court may modify an order establishing possession of and access to a child only if the modification would be in the child's best interest and there has been a material and substantial change of circumstances. TEX. FAM. CODE ANN. § 156.101. In deciding whether a material and substantial change of circumstances has occurred, the trial court is not confined to rigid or definite guidelines. *In re C.M.C.*, 2016 WL 7166415, at *4. Instead, the determination is fact specific and

must be made according to the circumstances as they arise. *Id*. The law does not prescribe any particular method for showing changed circumstances, which may be established by circumstantial evidence. *Id*.

Among the things a trial court may consider when deciding if there has been a change of circumstances is a demonstrated inability to co-parent effectively since the time the last order was entered. *Id*. at *6; *see also In re M.R.H.*, No. 13-15-00516-CV, 2016 WL 8919846, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2016, no pet) (mem. op.); *Coburn v. Moreland*, 433 S.W.3d 809, 828 (Tex. App.—Austin 2014, no pet.). Here the evidence showed that, since the date of the last order, there was a ten-month period during which Father refused to exercise his periods of possession even when requested to do so by Mother. Furthermore, Father testified he felt it was not his responsibility to keep S.S. if Mother wanted or needed to travel, and he was unwilling to care for S.S. other than during his periods of court ordered possession. Mother testified that Father used the passport issue as leverage to try to reduce his child support obligation. Father's unwillingness to amicably co-parent meant that Mother would be required to find alternative care for her young child for extended periods if she wished to see her family outside the United States. We conclude the trial court did not abuse its discretion in concluding there had been a material and substantial change in circumstances.

Although not raised as a separate issue, Father also appears to suggest the trial court erred in concluding there was not a risk of international abduction if Mother

were allowed to take S.S. out of the country. Under section 153.501 of the Texas Family Code, if credible evidence is presented indicating a potential risk of the international abduction of a child by a parent, the court must determine whether it is necessary to take measures to protect the child. TEX. FAM. CODE ANN. § 153.501. In deciding whether a risk of abduction exists, the court is required to consider evidence that the parent (1) has "taken, enticed away, kept, withheld, or concealed a child in violation of another person's right of possession," (2) has "previously threatened to take, entice away, keep, withhold, or conceal a child in violation of another person's right of possession," (3) lacks financial reason to stay in the United States, (4) has "recently engaged in planning activities that could facilitate the removal of the child from the United States", (5) has a history of domestic violence, or (6) has a criminal history or history of violating court orders. *Id*. at § 153.502.

The only evidence Father presented to show a risk of abduction was his testimony that Mother "hid" S.S. at her aunt's house while she visited her parents and his allegation that Mother told him if she took S.S. out of the country, she would not come back. Mother vehemently denied both these things and it was within the trial court's discretion to believe her testimony over Father's. *In re C.M.C.*, 2016 WL 7166415, at *4. Mother additionally testified she was a United States citizen with a career as a registered nurse. She stated she had no intention of relocating and that doing so would cause her financial distress.

Based on the foregoing, we conclude the evidence supports the trial court's decision to modify the parent-child relationship by allowing Mother to obtain a passport for S.S. and travel with her internationally.  We affirm the trial court's order.


/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

210109F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF S.S., A
MINOR CHILD

No. 05-21-00109-CV

On Appeal from the 256th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-17-03102.
Opinion delivered by Justice
Reichek. Justices Partida-Kipness
and Goldstein participating.

In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee AMINATA NJIE recover her costs of this appeal from appellant ASSAN SARR.

Judgment entered May 19, 2022